# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**Davis Selected Advisers, L.P. and Venture Advisers, Inc.,**

        **Plaintiffs,**

v.                                                                                               Civ. No. 99-274 JP

**Raymond O. Padilla,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

On July 30, 1999, Plaintffs Davis Selcted Advisers, L.P. and Venture Advisers, Inc. ("DSA") filed a Motion for Summary Judgment (No. 25). On August 2, 1999 Defendant Raymond O. Padilla filed a Motion for Summary Judgment (No. 38) and a Motion for Jury Trial (No. 34); Plaintiff DSA filed a Motion to Strike (No. 31). Counsel argued these motions at a pretrial conference on September 14, 1999. Mel E. Yost and Donald A. Walcott represented DSA; Judith Herrera represented Mr. Padilla. At the conclusion of the conference, I instructed counsel to discuss the possibility of settlement, and report to me no later than October 1, 1999. On October 1 counsel advised me that further settlement discussions would not be fruitful, and that they awaited decision on the pending motions. Having heard arguments of counsel and having thoroughly considered the pleadings, facts and law, and being otherwise fully advised in the matter, I conclude that Plaintiff DSA's Motion for Summary Judgment should be granted. Accordingly, all other motions should be denied.[1]

---

[1] DSA's Motion to Strike the Affidavits of Raymond O. Padilla and Martin Proyect will be denied on the ground of mootness. The contested testimony in those affidavits plays no part in

## I. UNDISPUTED FACTS

In 1983, Plaintiff DSA hired Defendant Raymond Padilla as a securities broker/dealer. At the time of hiring, Mr. Padilla signed a Form U-4 in accord with National Association of Securities Dealers ("NASD") regulations. Form U-4 contains a provision calling for arbitration of "any dispute, claim or controversy" between the parties that is required to be arbitrated under NASD rules. DSA fired Mr. Padilla in December 1996. On January 16, 1998 Mr. Padilla sued DSA in state court alleging employment discrimination, retaliation, breach of contract, Title VII claims, and other claims, all arising out of his termination. The state court ultimately set trial for June 21, 1999 and discovery proceeded. Counsel for DSA in state court (not present counsel of record) first learned of Form U-4 on March 9 or 10, 1999. On March 12, she filed a demand for arbitration with the NASD and this federal court action. As a result, the state court then temporarily stayed the proceeding there. The NASD arbitration demand was also stayed. DSA urges me to order the parties to arbitrate and to stay the state court proceeding under 9 U.S.C. §§ 3-4. Mr. Padilla contends that his claims should be heard in state court.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the factual record and reasonable inferences therefrom are examined in the light most favorable to the party opposing summary judgment. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial

---

my decision to grant DSA's Motion for Summary Judgment because Armijo v. Prudential Ins. Co., 72 F.3d 793, 797-99 (10th Cir. 1995) states that a party's signature on Form U-4 "clearly indicates" an intent to arbitrate, and that this intent is a question of law.

burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U. S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. See Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Whether a party intends to arbitrate a particular dispute is a question not of fact but of law. See Armijo v. Prudential Life Ins. Co., 72 F.3d 793, 797 (10th Cir. 1995).

## III. DISCUSSION

### A. NASD Rules

Mr. Padilla's executed U-4 contains the following language.

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm...that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD]...as may be amended from time to time.

The dispute centers around which of two editions of the NASD Code this language incorporates.[2] DSA contends that I should apply the post-October 1, 1993 version because it was in force at the time of the events leading to the underlying litigation and at the time Mr. Padilla filed his state court case. That version indicates rather clearly that disputes such as those raised by Mr. Padilla arising out of employment "shall be arbitrated." See Armijo, 72 F.3d at 798 n.5 (10th Cir. 1995) (quoting sections 1 and 8(a) of the NASD Code amended October 1, 1993, noting the Code was amended then specifically to mandate arbitration). Mr. Padilla urges application of the Code as amended January 1, 1999. That edition carves out an exception to mandatory arbitration.

---

[2] To the extent Mr. Padilla relies on Armijo to state that the Code in effect on May 13, 1986 when he signed his Form U-4 did not even apply to disputes between employees and employers, he is in error. Armijo merely indicates that the Code applied to disputes between employers and employees "as early as 1987." See Armijo, 72 F.3d at 799.

3

> A claim alleging employment discrimination...in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

NASD Code of Arbitration Procedure § 10201(b). The NASD comments that this amendment will not affect "pending litigation in which an employee has filed a discrimination claim in court (prior to 1/1/99) and the member is seeking a motion to compel arbitration." NASD Frequently Asked Questions. The NASD defines claims as including "claims filed in arbitration and complaints filed in court." Id.

DSA prevails under either version. In January 1998, when Mr. Padilla filed suit in state court for acts arising out of his employment, the NASD Code indisputably mandated arbitration for the causes of action alleged, regardless of when the underlying acts occurred.. See Armijo, 72 F.3d at 798 (October 1, 1993 amendment drafted "to make it clear that its arbitration provisions covered at lest certain employment disputes.") Although the January 1, 1999 amendment and its interpretations added ambiguity, the result is not changed merely because DSA filed a post-January 1, 1999 demand for arbitration. While the NASD does not indicate which "claim" takes precedence, case law suggests the first in time controls. See Herman v. Warburg Dillon Read, Inc., 1999 WL 688304 (S.D.N.Y.) (employer who sought arbitration under Form U-4 on December 30, 1998 prevails over employee who sued on same claims in district court on March 3, 1999, noting "first-filed" is general rule). The language of the NASD comments point to the same result. Mr. Padilla had "pending litigation" against his employer "in court (prior to 1/1/99)." NASD Frequently Asked Questions. The March 12, 1999 demand for arbitration does not change this fact. Thus, Mr. Padilla's signature on Form U-4 bound him to arbitrate.

**B.** **Relief from contractual obligations**

In the alternative, Mr. Padilla seeks equitable relief from the application of the NASD arbitration provisions to him. First, he argues that the policy in favor of enforcing arbitration agreements which the Federal Arbitration Act embodies should give way in light of Shankle v. B-G Maintenance Management of Colo., Inc., 163 F.3d 1230 (10th Cir. 1999). There the court interpreted an arbitration agreement, not a Form U-4, which called for arbitration between a custodian and his employer. See Shankle, 163 F.3d at 1231-32. In finding the agreement unenforceable, the court relied in part on the prohibitive costs (one-half of the arbitrator's fees) which the agreement required the employee to bear, and his inability to pay. The arbitration costs were so high as to preclude any forum for the employee's statutory rights. See id. at 1235. Even "[s]crutinizing the document as of the date it was executed," see Respondent's Reply at 4, does not indicate that Mr. Padilla the securities dealer was in the same boat as the presumptively less sophisticated non-union janitor in Shankle. Further, while he indicates possible responsibility for "several thousand dollars"of arbitration fees, see Mr. Padilla's Reply Brief in Support of Motion for Summary Judgment at 4, nowhere does Mr. Padilla expressly claim the

financial hardship that was so crucial to the decision in Shankle.[3] The Shankle factors simply are not present here.

---

[3] Mr. Padilla does not dispute that he received over one million dollars for his partnership units when DSA fired him. Also, DSA indicates that it will cover all arbitration fees if they are truly an obstacle to Mr. Padilla's forum access. While the mere possibility of fee-shifting does not factor into my decision, see Shankle, 163 F.3d at 1234 n.4, I note again that Mr. Padilla has not shown that arbitration fees would be prohibitively high for him, and accordingly decline to order DSA to bear more arbitration costs than NASD rules would otherwise require.

5

Mr. Padilla also urges me, without explaining why, to follow Duffield v. Robertson Stephens & Co., 144 F.3d 1182 (9th cir. 1998), cert. denied, 119 S.Ct. 445 (1998) in which the Ninth Circuit found that the Civil Rights Act of 1991 rendered Form U-4s unenforceable for Title VII claims. Basing its finding primarily on legislative history, The Court of Appeals for the Ninth Circuit noted that compulsory arbitration provisions would force the unacceptable choice between one's job or civil rights. See Duffield, 144 F.3d at 1199. But see Seus v. John Nuveen & Co., 146 F.3d 175, 183 (3rd Cir. 1998) ("we respectfully disagree with the decision...in Duffield."). As compelling as the Duffield argument may be, Metz v. Merrill Lynch, 39 F.3d 1482 (10th Cir. 1994) is still the law in the Tenth Circuit. Although the Metz court did not consider the impact of the Civil Rights Act of 1991 upon Form U-4, it did find the form, and the arbitration provisions it embodies, enforceable in Title VII cases. See Metz, 39 F.3d at 1487. The District Court for the District of New Mexico is constrained to follow Tenth Circuit law.

Mr. Padilla also cannot find refuge in Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 163 F.3d 1, 19 (1st Cir. 1999) (U-4 unenforceable because employer did not provide or describe the arbitration rules to which she was agreeing). Cf. Seus, 143 F.3d at 184 ("[n]othing short of a showing of fraud, duress, mistake or some other ground recognized by the law applicable to contracts generally would have excused the district court from enforcing [the U-4]"); Rand v. J.C. Bradford & Co., 1998 WL 872421, *2 (S.D.N.Y. 1998) (recognizing that under general contract principles a party is bound to what he signs, and that a court's focus should be not on each clause but whether there was an objective agreement to the entire contract, upholding Form U-4 arbitration provision). Although the court in Rosenberg based its decision on the Civil Rights Act of 1991, not contract principles, see Rosenberg, 170 F.3d at 19 n.16, Mr.

6

Padilla relies on it for the latter. He argues that the U-4 he signed, "which locked in on NASD rules, did not tell him what those rules are." Mr. Padilla's Reply Brief in Support of Motion for Summary Judgment at 3.

Mr. Padilla's argument is not well-taken here in the U-4 context. For example, in Armijo The Tenth Circuit described a U-4, identical in relevant part to that which Mr. Padilla signed, as containing language that "clearly indicates that [the signor] believed, and intended, that at least certain disputes...would be arbitrated." Armijo, 72 F.3d at 799. For another example, in Adams, the Tenth Circuit refused to allow investors, presumably less-informed than Mr. Padilla, out of arbitration agreements with brokers on the premise that one is presumed to read that which he signs. See Adams, 888 F.2d at 701. Again, reliance on a case decided by another Court of Appeals is ineffective because opinions by the Tenth Circuit govern the issue.

### C. Waiver

After January 16, 1998, when Mr. Padilla filed the state court lawsuit, DSA participated in the litigation until March 12, 1999 when it filed its arbitration demand. Mr. Padilla contends that this fifteen month span, which includes a wide range of participatory acts on DSA's part, constitutes waiver of the arbitration provision.

The Tenth Circuit follows a six-factor test to determine whether a party has waived its right to enforce an arbitration agreement:

> (1) whether the party's actions are inconsistent with the right to arbitrate;
> (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate;
> (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;
> (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay

7

>   of the proceedings;
>   (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and
>   (6) whether the delay affected, misled, or prejudiced the opposing party.

McWilliams v. Logicon, Inc., 143 F.3d 573, 577 (10th Cir. 1998) (quoting Peterson v. Shearson/American Express, Inc., 849 F.2d 464, 467-68 (10th Cir. 1988)) (internal quotes omitted). Tenth Circuit law following the adoption of this test suggests that the dispositive factor is whether the party seeking to prove waiver suffered "substantial prejudice." See Adams, 888 F.2d at 701. I also note tandem federal policies in favor of arbitration and against waiver. See Moses H. Cone Mem'l Hosp., 460 U.S. 1, 24-25 (1982); Peterson, 849 F.2d at 466.

Applying this law to the facts of this case, I conclude that DSA has not waived its right to enforce the arbitration agreement. As to the first two factors, Mr. Padilla argues that attempted removal to federal court, participation in discovery scheduling and settlement conferences, taking extensive depositions, requesting and responding to requests for written discovery, and participating in discovery hearings in state court all constitute substantial invocation of the litigation machinery and are inconsistent with the right to arbitrate. DSA counters by arguing that it never invoked the court's discretion on matters going to the merits of the case. It also points out that it did not find Mr. Padilla's U-4 until about March 9 or 10, 1999. At the pretrial conference, DSA claimed the form was not in Mr. Padilla's personnel file so that it could not have known about it. DSA contends it moved immediately, on March 12, 1999, to file its arbitration demand and motion to stay state court proceedings.

DSA's fifteen month delay, encompassing a corresponding amount of pre-litigation behavior, is bothersome. So too is DSA's explanation. While DSA did not create the U-4, DSA

presented it to Mr. Padilla and even countersigned it. The evidence also suggests DSA had other employees who signed U-4's. In short, DSA should have known about the form earlier. Although DSA did assert its arbitration right quickly once it became known to DSA's counsel, these individual factors tip in Mr. Padilla's favor.

As to the third factor, Mr. Padilla claims that the March 12, 1999 arbitration demand came much too close to the March 15, 1999 trial date. This argument is misleading given his failure to point out that on January 22, 1999 the state court vacated the March 15, 1999 trial date and reset it on June 21, 1999. This factor favors DSA.

The parties agree the fourth factor does not apply.

Mr. Padilla claims that DSA took advantage of judicial discovery not available in arbitration, and that therefore the fifth factor favors him. Moreover, Mr. Padilla claims that while DSA has obtained all the discovery it requested, he has not. He says that two unspecified motions to compel are stayed pending my decision. His first motion to compel was voluntarily stayed by agreement pending the completion of some yet-to-be finished depositions. He adds that he has not completed two depositions of critical witnesses, and has not taken depositions of others "because he needs to obtain additional documents." Mr. Padilla's Response to Petitioner's Motion For Summary Judgment at 15. DSA has offered "to allow Respondent to complete his requested depositions should the court compel arbitration [and] to complete discovery commenced in the state court litigation." DSA's Reply to Respondent's Response to Petitioners' Motion for Summary Judgment at 5. I interpret these comments to indicate that DSA will no longer oppose discovery of the subjects of two motions to compel, and other discoverable materials thus far requested by Mr. Padilla in state court. Neither party expressly describes the

scope of discovery under arbitration, nor do they describe what discovery might be available here but not in arbitration. To the contrary, they suggest some, if not all of the same discovery may be had.

This factor then also tips toward DSA. If the scope of arbitration discovery is similar to state court, then Mr. Padilla cannot cry foul. If it is more restricted, I can hardly find DSA has taken unfair advantage of judicial discovery procedures when Mr. Padilla has not described any discovery DSA had in state court to which it would not have access in arbitration. Further, he should not claim DSA is taking advantage of discovery procedures not available in arbitration. Following DSA's removed opposition to the pending discovery requests, he too will have received all the discovery he has requested, thus taking similar "advantage" of the judicial discovery system.

The final, and most significant, factor also favors DSA. While DSA's delay may have affected or misled Mr. Padilla, see McWilliams, 143 F.3d at 577, any resulting prejudice he suffered if at all was slight, not substantial, see Adams, 888 F.2d at 701. He bases his claim for prejudice almost entirely on perceived discovery inequality. But as noted earlier, his discovery argument is either groundless (if he can obtain the same discovery in arbitration) or nullified (by DSA's withdrawn opposition to pending discovery requests.)

Having considered all applicable factors, I find that DSA has not waived its right to arbitration.

IT IS THEREFORE ORDERED that

(1) DSA's Motion for Summary Judgment (No. 25) is GRANTED;

(2) the parties are ORDERED to submit their claims to arbitration in accordance with

NASD rules and 9 U.S.C. § 4;

(3) case number D-101-CV-9800131, <u>Raymond O. Padilla v. Davis Selected Advisers, L.P.</u>, in the First Judicial District of the State for New Mexico is STAYED;

(4) Mr. Padilla's Motion for Summary Judgment (No.38) is DENIED;

(5) DSA's Motion to Strike the Affidavits of Raymond O. Padilla and Martin Proyect (No. 31) is DENIED; and

(6) Mr. Padilla's Motion for Jury Trial (No. 34) is DENIED.

*[signature: James A. Parker]*
**UNITED STATES DISTRICT JUDGE**